**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | |
|---|---|
| LAWRENCE TOLO, | : |
| Petitioner, | : |
| vs. | :   CA 06-0650-CB-C |
| ALBERTO GONZALES, etc., et al., | : |
| | : |
| Respondents. | |

**REPORT AND RECOMMENDATION**

Lawrence Tole, a native and citizen of Kenya ordered removed from the United States and presently being detained by the Immigration and Customs Enforcement ("ICE") arm of the United States Department of Homeland Security, has petitioned this Court for habeas relief pursuant to 28 U.S.C. § 2241.[1] This matter has been referred to the undersigned for entry of a report

---

[1] While petitioner is no longer in the actual and present physical custody of David O. Streiff, Warden of the Perry County Correctional Center in Uniontown, Alabama, *see Rumsfeld v. Padilla*, 542 U.S. 426, 447, 124 S.Ct. 2711, 2724, 159 L.Ed.2d 513 (2004) ("Whenever a § 2241 habeas petitioner seeks to challenge his present physical custody within the United States, he should name his warden as respondent and file the petition in the district of confinement."), he was confined in the Perry County Correctional Center when he filed the instant action and, therefore, this Court retains jurisdiction to decide this matter, *see Patel v. United States Attorney General*, 334 F.3d 1259, 1263 (11th Cir. 2003) ("Habeas jurisdiction requires that the petitioner be in 'custody.' 'Custody' is determined as of the time of the filing of the petition.").

and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(c). It is recommended that the instant petition be dismissed, without prejudice to being filed at a later date in the district of confinement,[2] because Tolo prematurely filed the present attack upon his post-removal-period detention.

## FINDINGS OF FACT

1.   Tolo is a native and citizen of Kenya who entered the United States on January 5, 1985 as a non-immigrant student holding an F-1 visa. (Doc. 1, ¶ 12; *see also* Doc. 13, Exhibit A) On December 15, 1994, an Immigration Judge ordered petitioner removed from the United States for failing to comply with the conditions of his student status and denied Tolo's applications for asylum and withholding of deportation. (Doc. 13, Exhibit B; *see also* Doc. 1, ¶ 6; Doc. 19, Exhibit 1) Petitioner filed a timely appeal with the Board of Immigration Appeals; the appeal was summarily dismissed on September 8, 1995. (Doc. 13, Exhibit B) "Pursuant to the Immigration Judge's order and in accordance with our decision in Matter of Chouliaris, 16 I&N Dec. 168 (BIA 1977), the respondent is permitted to depart from the United States **voluntarily** within 30 days from the date of this order or any extension

---

[2]   Tolo is now confined in the Etowah County Detention Center in Gadsden, Alabama. (Doc. 14)

beyond that time as may be granted by the district director; and in the event of failure to so depart, the respondent shall be deported as provided in the Immigration Judge's order." (*Id.* (emphasis supplied))

  2. Tolo failed to voluntarily depart the United States and, on April 3, 2006, was arrested pursuant to a warrant of deportation at his place of employment in Durham, North Carolina. (Doc. 13, Exhibit C) Tolo has been in ICE custody since his arrest on April 3, 2006. (Doc. 1, ¶¶ 6 & 11) The Record of Deportable/Inadmissible Alien filed by the federal respondents contains the following notation: "Subject is a fugitive absconder as he has a Final Order of Deportation from the United States." (Doc. 13, Exhibit C)

  3. On June 8, 2006, a legal assistant with the U.S. Immigration Court notified Tolo that his case was not currently pending in that court; rather, jurisdiction was "with the Board of Immigration Appeals[.]" (Doc. 19, Exhibit 2)

  4. On July 7, 2006, an Immigration Judge denied Tolo's motion to reopen proceedings. (Doc. 19, Exhibit 2) "This Court is without jurisdiction to consider this motion. On 9/8/95, the BIA summarily dismissed the appeal & respondent was given 30 days to depart. This is a final administrative order." (*Id.*)

5.      On July 10, 2006, Tolo submitted a motion to reopen his case (and stay his deportation) with the Board of Immigration Appeals. (*See* Doc. 1, ¶¶ 6 & 11) On July 20, 2006, and again on August 1, 2006, Immigration Judge William A. Cassidy entered orders with respect to Tolo's requests for a change of custody status and therein stated he lacked jurisdiction to take action on those requests because a final order of removal was in place. (Doc. 13, Exhibits D & E)

6.      On December 14, 2006, the Board of Immigration Appeals entered the following *per curiam* order:

> In a decision dated December 15, 1994, an Immigration Judge denied the respondent's applications for asylum, withholding of deportation, and suspension of deportation under sections 208, 243(h), and 244(a) of the Immigration and Nationality Act, 8 U.S.C. §§ 1158, 1253(h), and 1254(a). On September 8, 1995, the Board summarily dismissed the respondent's appeal. On July 10, 2006, the respondent filed a motion to reconsider the Immigration Judge's decision and to reopen so that he can apply for cancellation of removal under section 240A(b) of the Act, 8 U.S.C. § 1229b(b), protection under the Convention Against Torture, and asylum and withholding of deportation. He subsequently filed several supplements to his motion which include two requests for a stay of removal and an application for employment authorization. The Department of Homeland Security (DHS) has filed no response to any of the respondent's filings. The motion to reconsider and reopen is denied for lack of jurisdiction. Because we summarily dismissed the respondent's appeal, we did not assume jurisdiction over the appeal and thus have no jurisdiction over any motions filed by the respondent since jurisdiction lies

4

> with the Immigration Judge. *See Matter of Mladineo*, 14 I&N Dec. 591 (BIA 1974). *See also Matter of Lopez*, 22 I & N Dec. 16 (BIA 1998). Accordingly, the record is returned to the Immigration Court without further Board action.

(Doc. 19, Exhibit 3)

    7.    Having been informed by the Board of Appeals that it did, in fact, have jurisdiction over Tolo's motion to reopen, the Immigration Court, through one of its immigration judges, granted petitioner's stay of removal on January 4, 2007 "pending consideration of the motion to reopen[.]" (Doc. 13, Exhibit F)

    8.    On January 23, 2007, ICE filed a request with the Embassy of Kenya for issuance of a travel document for Tolo. (Doc. 13, Exhibit G)

## **CONCLUSIONS OF LAW**

    1.    In *Zadvydas v. Davis*, 533 U.S. 678, 688, 121 S.Ct. 2491, 2498, 150 L.Ed.2d 653 (2001), the Supreme Court determined that "§ 2241 habeas corpus proceedings remain available as a forum for statutory and constitutional challenges to post-removal-period detention."

    2.    The Supreme Court, in *Zadvydas*, held that the post-removal-period detention statute, 8 U.S.C. § 1231, "read in light of the Constitution's demands, limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United

States. It does not permit indefinite detention." 533 U.S. at 689, 121 S.Ct. at 2498.

  3.  8 U.S.C. § 1231 reads, in relevant part, as follows:

  **(a)**  **Detention, release, and removal of aliens ordered removed**

    **(1)**  **Removal period**

      **(A)**  **In general**

      Except as otherwise provided in this section, when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the "removal period").

      **(B)**  **Beginning of period**

      The removal period begins on the **latest** of the following:

        **(i)**  The date the order of removal becomes administratively final.

        **(ii)**  If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.

        **(iii)**  If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or

confinement.

**(C)   Suspension of period**

The removal period shall be extended beyond a period of 90 days and the alien may remain in detention during such extended period if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal.

**(2)   Detention**

During the removal period, the Attorney General shall detain the alien. Under no circumstances during the removal period shall the Attorney General release an alien who has been found inadmissible under section 1182(a)(2) or 1182(a)(3)(B) of this title or deportable under section 1227(a)(2) or 1227(a)(4)(B) of this title.

*Id.* (emphasis supplied). The Supreme Court in *Zadvydas* concluded that six months represents a presumptively reasonable period of time to detain a removable alien awaiting deportation pursuant to the provisions of this statute. 533 U.S. at 701, 121 S.Ct. at 2505 ("While an argument can be made for confining any presumption to 90 days, we doubt that when Congress shortened the removal period to 90 days in 1996 it believed that all reasonably foreseeable removals could be accomplished in that time. We do have reason to believe, however, that Congress previously doubted the constitutionality of detention for more than six months. . . . Consequently, for the sake of uniform

administration in the federal courts, we recognize that period. After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink. This 6-month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future."); *see Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir. 2002) ("Although not expressly stated, the Supreme Court appears to view the six-month period to include the 90-day removal period plus 90 days thereafter.").

   4. In *Akinwale*, the Eleventh Circuit determined that the six-month detention period recognized by the Supreme Court "must have expired" at the time a petitioner's § 2241 petition is filed "in order to state a claim under *Zadvydas*." 287 F.3d at 1052; *see also id.* ("[I]n order to state a claim under *Zadvydas* the alien not only must show post-removal order detention in excess of six months but also must provide evidence of a good reason to believe that

there is no significant likelihood of removal in the reasonably foreseeable future."). The *Akinwale* court also indicated that the running of the six-month detention period can be interrupted or tolled by the alien moving for a stay of deportation/removal. *See id.*, n.4 ("Akinwale was taken into custody on November 17, 1999, and interrupted the running of time under *Zadvydas* by moving on December 3, 1999, for a stay of deportation in his prior appeal to this Court. The stay was granted on January 10, 2000. . . . Akinwale subsequently filed the § 2241 petition in this case on March 21, 2000. Thus, Akinwale, unlike the aliens in *Zadvydas*, chose to simultaneously challenge issues related to his removal order and his post-removal period detention. . . . Therefore, Akinwale did not have even an unencumbered month of detention prior to filing his § 2241 petition, let alone the requisite six months."); 8 U.S.C. § 1231(a)(1)(C) ("The removal period shall be extended beyond a period of 90 days and the alien may remain in detention during such extended period if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal.").

      5.     In this atypical case, Tolo has filed his § 2241 petition prematurely. Petitioner's filing date in the instant action, October 10, 2006

(Doc. 1), certainly comes more than six months after petitioner was arrested on April 3, 2006 for failing to voluntarily depart the United States within thirty (30) days of the final administrative order of removal dated September 8, 1995. However, the fact that petitioner has been in ICE custody more than six months after the final administrative order of removal (and his arrest) does not advance his argument that he should be released under *Zadvydas* because the statute explicitly provides that the removal period begins on the "latest" of when the order becomes administratively final[3] or "[i]f the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order." 8 U.S.C. § 1231(a)(1)(B)(i)-(ii). In this case, petitioner's removal order has never gotten to the point of being judicially reviewed because Tolo did not appeal the September 8, 1995 decision of the Board of Immigration Appeals to the appropriate court and now has pending, before an immigration judge, a motion to reconsider the December 15, 1994 decision of the immigration judge and to reopen his final order of removal. Therefore, in accordance with the clear language of the statute, as well as

---

[3] The federal respondents contend in their answer that the order of removal is not administratively final in light of petitioner's motion to reconsider and reopen the immigration judge's December 15, 1994 decision. (Doc. 13) The undersigned finds no reason for the Court to directly address the federal respondents' argument in this regard given the suggested disposition of this unusual case.

10

*Zadvydas* and *Akinwale*, Tolo has had no period of detention prior to the filing of his § 2241 petition that can be counted toward the six-month post-removal-period detention recognized as presumptively reasonable by the Supreme Court.  In other words, not only had the six-month period not expired prior to the filing of the instant petition, it will not begin to run until after Tolo petitions the appropriate court for judicial review as contemplated in 8 U.S.C. § 1231(a)(1)(B)(ii) or decides not to seek judicial review; thus, petitioner has not stated a claim for relief under 28 U.S.C. § 2241 and *Zadvydas*.

      6.      To the extent petitioner would argue that he would be unable to petition any court for judicial review of the final administrative order of removal under § 1231(a)(1)(B)(ii), the undersigned would simply note in the alternative that petitioner, by moving, on July 10, 2006, to reopen the final administrative order of removal and stay his removal/deportation, interrupted the running of time under *Zadvydas*. *Akinwale, supra*, 287 F.3d at 1052 n.4; *see also supra* 8 U.S.C. § 1231(a)(1)(C). Tolo certainly has never made timely application in good faith for travel documents from the Kenyan Embassy; instead, he contends in his motion to reopen (and stay) that he will be tortured if returned to his native Kenya. Therefore, petitioner cannot be allowed to secure release from detention which, he argues, has surpassed the

11

presumptively reasonable six month period because of an administrative stay entered at his request to block his removal pending a decision on the motion to reopen his final administrative order of removal. Under this alternative scenario, and pursuant to § 1231(a)(1)(C) and *Akinwale,* Tolo, at best, was in detention three months prior to the filing of his § 2241 petition; therefore, his petition was still prematurely filed.

## **CONCLUSION**

For these reasons, the undersigned recommends that this Court dismiss, without prejudice, Lawrence Tolo's habeas corpus petition filed pursuant to 28 U.S.C. § 2241. Tolo's petition has been prematurely filed under 8 U.S.C. § 1231. The dismissal is without prejudice to petitioner's ability to file a new § 2241 petition in the future, and in the appropriate court, when he is able to state a claim under *Zadvydas*.

The attached sheet contains important information regarding objections to the report and recommendation of the Magistrate Judge.

**DONE** this the 25th day of April, 2007.

      s/WILLIAM E. CASSADY
      **UNITED STATES MAGISTRATE JUDGE**

**MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND RESPONSIBILITIES FOLLOWING RECOMMENDATION, AND FINDINGS CONCERNING NEED FOR TRANSCRIPT**

l.      *Objection*.  Any party who objects to this recommendation or anything in it must, within ten days of the date of service of this document, file specific written objections with the Clerk of this court.  Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge.  *See* 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982)(*en banc*).  The procedure for challenging the findings and recommendations of the Magistrate Judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a 'Statement of Objection to Magistrate Judge's Recommendation' within ten days after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.      *Transcript (applicable Where Proceedings Tape Recorded)*.  Pursuant to 28 U.S.C. § 1915 and FED.R.CIV.P. 72(b), the Magistrate Judge finds that the tapes and original records in this case are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

                                                       s/WILLIAM E. CASSADY
                                                       UNITED STATES MAGISTRATE JUDGE